# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CRIMINAL CASE NO. 1:11cr10

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| JAMES W. "BILL" BAILEY, JR. ) | |

**THIS MATTER** is before the Court on the Motion by Claimants Brian D. Gardze, Carlton Lee Matthews, Stephen M. Todd, Daniel F. Russian, Bruce H. Keel, and Gregory McCarthy ("Petitioners") to clarify the Court's Order of April 8, 2011 regarding the calculation of their interests in certain certificated securities in Sage Automotive Interiors, Inc. ("Sage"). [Doc. 226].[1]

## I. PROCEDURAL BACKGROUND

On February 1, 2011, the Defendant was charged with filing false tax returns and with committing securities and mail fraud. [Bill of Information,

---

[1]The original Sage Petitioners also included David E. Gable, Brian T. McSharry, Douglas W. Morris, Lorri K. Morris, Sidney S. Locke, Michael J. Mikina, Wendy Hammond, Mark A. Brezenski, and Timothy E. Batson. These Petitioners' claims were granted in full by the April 8, 2011 Order and therefore these Petitioners have not joined in the Motion to Clarify. Petitioner Dirk R. Pieper, who was awarded 74.19% of the sale proceeds of the Sage Certificates, also does not challenge the Court's prior ruling.

Doc. 1]. The Bill of Information contained a Notice of Forfeiture, which indicated that the Government intended to pursue the forfeiture of the Defendant's interest in various property. [Doc. 1 at 11]. Following the Defendant's plea of guilty to the Bill of Information on February 16, 2011, the Defendant and the Government presented the Magistrate Judge with a proposed Consent Order and Judgment of Forfeiture [Doc. 16], whereby the parties agreed that the Defendant would "forfeit his interest" in certain identified properties. Specifically with respect to the Sage Certificates, the Defendant agreed to forfeit his interest in "[a]ny and all share or percentile ownership of entities, including but not limited to . . . 110,000 share of Sage Automotive . . . ." ("the Certificates"). [Id. at 8 ¶VI.ZZ]. The parties made no offer of proof in support of the proposed forfeiture order. The Consent Order and Judgment of Forfeiture was entered on February 16, 2011. [Doc. 16].

The Sage Petitioners filed their Verified Claims on March 11, 2011, seeking to adjudicate the validity of their interests in the Certificates. [Docs. 23-38]. Sage and another company signed a sale agreement in late March 2011. Due to the need to redeem the Certificates as part of the process of closing the transaction and to preserve their rights to reinvest with the new company, the Sage Petitioners moved for an expedited hearing on their

claims. [Doc. 48]. The Court granted the Petitioners' motion and held an expedited hearing on April 5, 2011.

On April 8, 2011, the Court entered an Order (hereinafter, "the Sage Order"), holding that the funds given by the Sage Petitioners to the Defendant for the purchase of the Certificates were subject to a constructive trust. Using the bank record summaries that were prepared by the Government and introduced at the hearing without objection by the Sage Petitioners, the Court applied the lowest intermediate balance rule to trace the Petitioners' funds and to determine the amount of the Certificates' value that should be returned to them. [Doc. 164].

On June 7, 2011, several of the Sage Petitioners filed the present motion seeking reconsideration of the Sage Order. [Doc. 226]. The Government filed its Response in opposition on June 17, 2011. [Doc. 232]. The Sage Petitioners filed their Reply on June 24, 2011. [Doc. 233].

On July 13, 2011, the ancillary proceedings in this case were referred to the Magistrate Judge for the purpose of conducting such hearings as may be required to adjudicate the third-party petitions. [Doc. 239]. These ancillary hearings were scheduled to be heard the week of September 26, 2011. [Doc. 241]. On September 7, 2011, however, the Court entered an Order staying

all ancillary proceedings in this matter pending the disposition of the present motion to clarify. [Doc. 286].

## II. FACTUAL BACKGROUND

The basic underlying facts are not in dispute. In 2008, the entity that was to become Sage was a division of Milliken Corporation ("Milliken"), a textile and chemical company headquartered in Spartanburg, South Carolina. When Milliken decided to withdraw from the automotive market and close the division, the management team of the division decided to pursue incorporating and operating as an independent entity. Over a very short period of time, the management team attracted significant venture capital and converted the division into a privately-held company, which became Sage. The managers contributed significant capital from their Milliken retirement accounts and many of the division's employees' retirement accounts.

In order to utilize the retirement account funds, it was necessary to transfer the funds from their existing retirement accounts with Milliken to new, self-directed Individual Retirement Accounts ("IRAs"). The Petitioners made contact with the Defendant and his company, Southern Financial Services, Inc. ("Southern Financial"). The Defendant met with the Petitioners in

4

Greenville, South Carolina and discussed their need for self-directed IRAs. Specifically, he informed them that he was properly licensed and persuaded them that he could set up the appropriate accounts to allow the investment of their Milliken retirement funds in Sage. The Petitioners agreed to have the Defendant set up the appropriate accounts through Southern Financial and executed account agreements with the Defendant.

During September and October of 2009, the Petitioners transferred their retirement funds to Southern Financial, which in turn sent funds to the Smith Moore Leatherwood LLP ("Smith Moore") law firm in Greenville, South Carolina. Smith Moore then issued the Certificates to Southern Financial as custodian for the benefit of the Petitioners' individual IRA accounts. The Certificates were physically held in the offices of Southern Financial by the Defendant. At the time of purchase, the Certificates had a face value of 1.2 million dollars.

Unbeknowst to the Petitioners, the Defendant was not properly licensed to purchase securities and was in fact engaged in massive schemes to defraud his investors. The Defendant deposited all of the money he fraudulently obtained from investors -- regardless of what type of investment the investor had selected -- into Southern Financial's accounts and used

these funds as needed to perpetuate his schemes. In the instances of Petitioners Batson, Brezenski, Gable, Hammond, Locke, McSharry, Mikina, D. Morris, and L. Morris, purchases of the Certificates were made with funds collected directly from these Petitioners ("the Clear Tracing Petitioners"). In the instances of the remaining Petitioners ("the Other Sage Petitioners"), however, purchases of the Certificates were made in whole or in part with commingled funds.

In the Sage Order, the Court concluded that because the Defendant had obtained money from the Sage Petitioners through fraudulent means, a constructive trust arose in those funds at the time that they were conveyed to the Defendant. [Doc. 164 at 7]. Having determined that the Sage Petitioners had a valid legal interest in the funds under state law and that such interest was superior to any interest the Defendant may have had, the Court then conducted a tracing analysis. Because the Clear Tracing Petitioners' funds were directly traceable to the Certificates purchased and held by the Defendant, the Court imposed a constructive trust on the entirety of the Certificates issued on behalf of these Petitioners. [Id. at 8-9]. With respect to the other Petitioners, for whom Certificates were purchased in whole or in part with commingled funds, only a portion of these Petitioners' funds could

6

be traced to the purchase of the Certificates. Based on a review of the summary of bank records prepared by the Government and proffered by the Petitioners at the hearing, and utilizing the lowest intermediary balance rule, the Court calculated the percentage of each Petitioner's interest in the purchased Certificates. [Id. at 9-10]. The present Petitioners are among those who received only a percentage of the Certificates' value and who now seek reconsideration of the Court's Order.

### III. STANDARD OF REVIEW

Petitioners seek reconsideration of the Sage Order pursuant to Federal Rule of Civil Procedure 54(b). The Government argues that the Petitioners have not cited any authority to support the use of Rule 54(b) in a criminal forfeiture proceeding, and therefore the Petitioners' motion is procedurally improper and should be denied on this basis alone.

Rule 32.2(c) of the Federal Rules of Criminal Procedure, which governs criminal forfeiture proceedings, recognizes the applicability of the Federal Rules of Civil Procedure to such proceedings. Rule 32.2(c) provides, in pertinent part, that "[i]f multiple third-party petitions are filed in the same case, an order dismissing or granting one petition is not appealable until rulings are

made on all the petitions, unless the court determines that there is no just reason for delay." Fed. R. Crim. P. 32.2(c)(3). As the Advisory Committee Notes indicate, Rule 32.2(c) is based on Federal Rule of Civil Procedure 54(b). See Fed. R. Crim. P. 32.2 advisory committee notes, subsection (c) (2000 Adoption) ("The provision governing appeals in cases where there are multiple claims is derived from Fed. R. Civ. P. 54(b)."). The Advisory Committee Notes further encourage the use of Federal Rules of Civil Procedure in resolving ancillary claims:

> Experience has shown that ancillary hearings can involve issues of enormous complexity that require years to resolve . . . . In such cases, procedures akin to those available under the Federal Rules of Civil Procedure should be available to the court and the parties to aid in the efficient resolution of claims.

Id. While the Advisory Committee recognized that "it would not be appropriate to make the Civil Rules applicable in all respects," it found "several fundamental areas," including filing motions to dismiss, conducting discovery, filing motions for summary judgment, and appealing a final disposition of a claim, in which the procedures set forth in the Federal Rules of Civil Procedure "may be followed." Id.

Mindful of the civil nature of these proceedings, see United States v. BCCI Holdings (Luxembourg) S.A., 69 F.Supp.2d 36, 54 (D.D.C. 1999), the

Court finds the revision of an order disposing of an ancillary petition prior to the entry of a final forfeiture order to be one of those "several fundamental areas in which procedures analogous to those in the Civil Rules may be followed." Fed. R. Crim. P. 32.2 advisory committee notes, subsection (c) (2000 Adoption). Accordingly, the Court will consider the Petitioners' motion to clarify within the context of Federal Rule of Civil Procedure 54(b).

Rule 54(b) provides, in pertinent part, that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." As previously noted by the Court, reconsideration of the Sage Order may have a significant impact on the manner in which other pending ancillary claims are addressed by the parties and resolved by this Court, and may allow for a more uniform application of the law among all claimants in this matter. For these reasons, the Court finds it entirely proper to apply the principles of Federal Rule of Civil Procedure 54(b) to the present case.

The Court does not review a Rule 54(b) motion with the same strictures as would be applied to motions pursuant to Federal Rules of Civil Procedure

9

59 and 60. See American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505 (4th Cir. 2003); Bragg v. Robertson, 183 F.R.D. 494 (S.D. W. Va. 1998). Rather, in deciding whether to reconsider an interlocutory order, the Court should consider whether there has been an intervening change in controlling law, whether there is additional evidence not previously available, and whether the prior decision was based on clear error or will work a manifest injustice. Akeva v. Adidas, 385 F.Supp.2d 559, 565 (M.D.N.C. 2005); Baytree Associates, Inc. v. Dantzler, Inc., 2008 WL 2182202 (W.D.N.C. 2008).

## IV. ANALYSIS

In moving for reconsideration, the Petitioners cite *inter alia* that the financial information provided by the Government on which the Sage Order is based has proved to be incomplete and incorrect. They further question the manner in which the Court applied the lowest intermediate balance rule (LIBR) to calculate the Petitioners' interest in the subject property. [Docs. 226, 227]. In response, the Government maintains its opposition to imposing a constructive trust in favor of any of the petitioners and to the application of any kind of tracing analysis to determine the amount of their interest. The Government continues to insist that the fairest resolution of these Petitioners'

claims, as well as all of the other outstanding ancillary claims, would be to allow forfeiture of all assets identified in the preliminary order of forfeiture and, upon the approval of the Attorney General, conduct a *pro rata* distribution of the forfeited assets to all victims identified in a restitution order.[2] [Doc. 232].

After careful review of the parties' filings, and the entire record in this case, the Court concludes that the financial records compiled by the Government and introduced by the Petitioners in support of their claims do not provide a complete and accurate picture of Defendant's financial transactions so as to permit the Court to determine at this time whether Petitioners' funds can be traced to the Certificates at issue. The Court therefore will vacate its prior Order to the extent that it awarded Petitioners Gardze, Matthews, Todd, Russian, Keel, and McCarthy a percentage of the Certificates' value and will set this matter for rehearing as to those Petitioners.

---

[2]While the Government contends that a *pro rata* distribution of the assets identified in the preliminary order of forfeiture would be the fairest resolution of Petitioners' claims, such argument ignores the primary obligation of this Court to determine whether the assets at issue are even properly subject to forfeiture in the first instance. It is the duty of the Court to determine whether the claimants have a superior legal interest in the forfeited assets, and that determination must be made before the Attorney General may exercise his discretion in distributing the forfeited assets for the purposes of awarding restitution to victims. This Court can neither presuppose what the Attorney General may do in that regard, nor delegate to the Attorney General this Court's authority to make the determination in the first instance as to what should be forfeited.

The Court determines that rehearing of this matter is necessary for another, more fundamental reason as well. Review of the Motion for Reconsideration, as well as the myriad of filing by other claimants since the original Sage Hearing, has led the Court to question whether the Government satisfied its initial burden of proving the requisite nexus between the Defendant's crimes and the property sought to be seized pursuant to the preliminary order of forfeiture. Therefore, before the Petitioners' claims are reconsidered, the Court will require the Government to offer evidence to establish a substantial connection between the particular crimes committed by the Defendant and the property that the Government contends is subject to forfeiture. Only if the Government satisfies this burden will the Petitioners be required to go forward with their claims.

**A.**

The resolution of the Petitioners' claims is governed by Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853, as incorporated by 18 U.S.C. § 982(b). Pursuant to § 853, a court may order the forfeiture of (1) proceeds obtained as a result of the defendant's crime or (2) property used or intended to be used to commit or to facilitate the commission of that crime. 21 U.S.C. § 853(a). The initial burden is on the government to establish by a

preponderance of the evidence that the property at issue is subject to forfeiture. United States v. Herder, 594 F.3d 352, 364 (4th Cir. 2010); United States v. Cherry, 330 F.3d 658, 669–70 (4th Cir.2003). To obtain a preliminary order of forfeiture, the Government is required to establish "the requisite nexus" between the offenses to which the Defendant pled guilty and the property to be forfeited. Fed. R. Crim. P. 32.2(b)(1)(A). To satisfy this burden, the Government "must establish that there was a substantial connection between the property to be forfeited and the offense." Herder, 594 F.3d at 364. "Substantial connection may be established by showing that use of the property made the prohibited conduct less difficult or more or less free from obstruction or hindrance." Id.

Section 853(n) provides the only means by which third parties may claim an interest in forfeited assets. United States v. Reckmeyer, 836 F.2d 200, 203 (4th Cir. 1989). Once a preliminary order of forfeiture has been entered, a third party asserting a legal interest in the forfeited property may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). The Court must amend the order of forfeiture if the third party demonstrates by a preponderance of the evidence that:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or *was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section*; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section . . . .

21 U.S.C. § 853(n)(6) (emphasis added).

The Government has taken the position throughout this litigation that the validity of the "requisite nexus" finding in the preliminary forfeiture order cannot be challenged by the third party claimants in the ancillary proceedings. [See Doc. 127 at 2-3 ("In the ancillary proceeding, a petitioner cannot challenge forfeitability.").  The Fourth Circuit, however, has recognized the right of third party claimants to challenge the validity of a preliminary forfeiture order:

> Nothing in § 853(n) explicitly acknowledges the right of third parties to attack the validity of the forfeiture order by proving that a particular asset was not forfeitable under the terms of the statute.  Serious due process questions would be raised, however, if third parties asserting an interest in forfeited assets were barred from challenging the validity of the forfeiture.

14

> The determination made at the defendant's criminal trial that the property was subject to forfeiture cannot be considered binding on persons who were not only not parties to the criminal action but were specifically barred from intervening. See 21 U.S.C. § 853(k) (barring third parties from intervening in the criminal trial); Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 n.7, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) (citing Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971)) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.").

United States v. Reckmeyer, 836 F.2d 200, 206 (4th Cir. 1987). While other courts have held to the contrary, see, e.g., United States v. Andrews, 530 F.3d 1232, 1236-37 (10th Cir. 2008), it appears that Reckmeyer remains binding precedent in this Circuit. See United States v. McHan, 345 F.3d 262, 270 (4th Cir. 2003) (noting that "§ 853(n) is a means by which third persons who raise challenges to the validity of the forfeiture order [can] have their claims adjudicated") (citing Reckmeyer with approval).

**B.**

In the present case, the Government and the Defendant stipulated at the Defendant's plea hearing that the preliminary order of forfeiture should be entered and that the requisite nexus existed to justify the seizure of "any and all assets titled in the name of LLCs established by the Defendant and/or

15

Southern Financial Services for the purpose of managing and/or purchasing assets," including the Sage Certificates. [Doc. 16 at 3-4, ¶ VI]. The parties offered no stipulation of facts or evidence to the Magistrate Judge to justify the proposed forfeiture order. It was accepted upon the mere stipulation of the parties as to the conclusion that the nexus existed.

The Government seeks to justify the extraordinarily broad scope of this proposed forfeiture with its contention that the Defendant "fraudulently operated almost every facet of a multimillion dollar business, Southern Financial Services and related entities, over the course of a decade." [Doc. 281 at 2-3]. In short, it is apparently the position of the Government that every asset purchased by the Defendant on behalf of his clients over the course of a decade -- including the Sage Certificates -- constitutes proceeds of his fraud and is therefore forfeitable, regardless of whether those clients actually suffered a loss as a result of Defendant's fraud. [Id. at 4].

The ancillary claims asserted in this case, including those asserted by the Sage Petitioners, raise serious questions regarding the validity of the preliminary order of forfeiture, and these questions must be resolved before any of these ancillary claims can be addressed. Nearly all of the claimants who have filed ancillary claims in this matter are clients of the Defendant who

contend that they directed funds from their individual retirement accounts to the Defendant for the purpose of purchasing real property and other assets with those funds. These claimants allege that the Defendant performed these transactions as instructed: that LLCs were formed and property was purchased in the name of those LLCs and held for the benefit of the claimants. In short, these claimants contend that they received exactly what they expected to receive from the Defendant, in the manner they expected to receive it, and when they expected to receive it.

The Government contends that forfeiture of the claimants' assets is nevertheless proper under § 21 U.S.C. § 853 because these assets were transferred subsequent to the Defendant's fraudulent acts. The purpose of section 853(c), however, is to prevent a defendant from making subsequent transfers of assets in order to defeat forfeiture. See Reckmeyer, supra; United States v. Wilson, -- F.3d --, 2011 WL 5110047, at *5 (9th Cir. Oct. 28, 2011) ("The point of . . . § 853(c) is that the Government's interest attaches at the time of the crime, *in order to prevent criminals from distributing the proceeds of crime to friends, relatives, and straw persons.*") (emphasis added). Here, the Government does not seek to divest any accomplice or confidante of the Defendant of any improperly transferred assets; rather, it

seeks to divest the very persons whom the Government contends were victimized by the Defendant's schemes. Significantly, there has never been an allegation made that the Defendant was acting in collusion with these claimants, or that these transactions were somehow "sham" transactions designed to defeat forfeiture. Nor has there been any allegation that these claimants received any more or any less than what they bargained for: by all accounts, it appears that they suffered no loss as a result of these transactions, and the Defendant himself received no ill-gotten gain.[3] These circumstances have led the Court to question whether the Government has sufficiently established the requisite nexus between the particular crimes the Defendant has committed and the properties to be seized.

Accordingly, the Court will schedule a rehearing on the claims of Petitioners Gardze, Matthews, Todd, Russian, Keel, and McCarthy as to the Sage Certificates. Before the Court reaches any of these claims, the Government shall be required to establish the requisite nexus between the Defendant's crimes and the Sage Certificates at issue. Only if the Government establishes the requisite nexus will the Petitioners be required

---

[3]Indeed, it appears that it is only by the actions of the Government, in pursuing forfeiture of these assets, that these claimants stand to suffer any loss as a result of their dealings with the Defendant.

to come forward with evidence to establish their superior legal interest in the Certificates.[4]

# O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Motion to Clarify is **GRANTED**, and the Court's Order [Doc. 164] is hereby **VACATED IN PART** with respect to Petitioners Gardze, Matthews, Todd, Russian, Keel, and McCarthy only.

**IT IS FURTHER ORDERED** that this matter is hereby set for hearing on **December 12, 2011 at 9:00 a.m.** in accordance with this Order.

**IT IS FURTHER ORDERED** that the stay previously entered in this case is hereby lifted. Responses to any outstanding motions filed before the imposition of the stay shall be filed within fourteen (14) days of the entry of this Order. Reply briefs shall be filed within seven (7) days thereafter.

---

[4] As is further explained in the Order entered simultaneously herewith addressing Petitioner Glenn A. Warren's request for reconsideration of his preliminary motion to determine the application of the forfeiture order, it is the intent of the Court that the procedure described above shall be implemented with respect to all of the ancillary claims currently pending in this case.

**IT IS SO ORDERED**.

Signed: November 10, 2011

Martin Reidinger
United States District Judge